UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/25/18

GARY SANDERS,

               Plaintiff,

      -against-

CITY OF NEW YORK; WARDEN
MAX'SOLAINE MINGO; CAPTAIN LEON;
C.O. LEWIS; KELLY GUY; SUSAN NOAH;
and KATHLEEN LEHEY,

               Defendants.

**ORDER**

16 Civ. 7426 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Gary Sanders – a former pretrial detainee at the Anna M. Kross Center ("AMKC") on Rikers Island – brings this action under 42 U.S.C. § 1983 against the City of New York (the "City"), AMKC Warden Max'solaine Mingo, Captain Katia Leon, Correction Officer Shanika Lewis, physician's assistants Kelly Guy and Susan Noah, and nurse practitioner Kathleen Lehey (collectively, "Defendants"). Construed liberally, the Second Amended Complaint ("SAC") alleges that Defendants subjected Plaintiff to unconstitutional conditions of confinement and did not provide constitutionally adequate medical care, because they did not provide Plaintiff with an orthopedic mattress to accommodate his back injury. (SAC (Dkt. No. 11) at 6-7) Plaintiff also asserts a Monell claim against the City. (Id.)

        Defendants have moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6). (Def. Mot. (Dkt. No. 26)) For the reasons stated below, Defendants' motion to dismiss will be granted.

## **BACKGROUND**

## I.   **PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges that on May 28, 2016 – after his admission to the AMKC – he was interviewed by Physician's Assistant Susan Noah. (SAC (Dkt. No. 11) at 6) During the interview, Plaintiff told Noah that he had a "prior back injury," suffers from sciatica, and treats the condition with a "tens machine," which "shoots electrical pulses into [his] nerves." (Id.) Plaintiff claims that Noah "refuse[d] to acknowledge" this information. (Id.)

Plaintiff was later interviewed by Nurse Practitioner Kathleen Lehey. (Id.) Plaintiff requested "medication" and an orthopedic mattress as a "special accommodation" for his back condition. (Id.) According to Plaintiff, Lehey "ignored" both requests. (Id.)

Plaintiff further alleges that, "after constantly going to the clinic complaining [and] seeing [] physician assistant Kelly Guy," he underwent an X-ray and was prescribed naproxen, an anti-inflammatory drug. (Id. at 6-7) Plaintiff was later transferred to the Brooklyn Detention Complex, where he has been prescribed gabapentin for his back pain. (Id. at 7)

Plaintiff complains that he currently suffers from "extreme back pain[]" that runs from his back to his left leg, as well as alternating numbness and pain "like a million needles … sticking … all over [his] leg [and] feet." (Id.) It is not clear from the SAC whether these symptoms developed before or after Plaintiff's detention at the AMKC.

On June 23, 2016, Plaintiff filed a grievance – pursuant to the Inmate Grievance Request Program ("IGRP") at the AMKC – regarding his back pain and his requests for a mattress that is "suitable for [a] metal foundation frame." (Id. at 12) Plaintiff alleges that there was no response to his grievance. (Id. at 8) Plaintiff forwarded a copy of his grievance to Warden Mingo on July 13, 2016, and requested her assistance. (Id. at 8, 13) The SAC is silent

2

as to whether Warden Mingo responded to Plaintiff's letter. The SAC does not allege that

Plaintiff took any other steps to exhaust his administrative remedies. (Id. at 8)

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on September 20, 2016.  The Complaint names

Warden Mingo and Bob Barker – a mattress manufacturer – as defendants.  (Cmplt. (Dkt. No. 2))

On October 25, 2016, Chief Judge McMahon issued an Order to Amend which identified certain

deficiencies in the Complaint, and granted Plaintiff leave to file an amended complaint within

sixty days.  (Oct. 25, 2016 Order (Dkt. No. 6))

The Order to Amend explains that – in order to state an unconstitutional

conditions of confinement claim based on inadequate bedding –

> a plaintiff must allege facts showing that (1) he had a pre-existing medical
> condition requiring a special bed to protect against serious damage to his future
> health; (2) he made that medical condition known to the prison officials; (3) he
> requested a special bed to accommodate such medical condition; and (4) an
> official who knew of and disregarded an excessive risk to the plaintiff's health or
> safety denied his request. . . . [A] [plaintiff's] naked assertions that [he] suffered
> extreme pain as a result of [an] inadequate bed[], without more, d[o] not meet the
> standard for pleadings in a § 1983 action.

(Id. at 3 (internal quotation marks omitted) (citing Howard v. City of New York, 12 Civ. 4069

(PAE) (JCF), 2013 WL 504164, at *2, 4 (S.D.N.Y. Feb. 11, 2013)))

The Order to Amend further states that,

> [i]n his [C]omplaint, Plaintiff does not allege that his mattress exacerbated any
> prior injuries, that he informed anyone at Rikers Island about a pre-existing injury
> requiring a special bed, or that any Defendant refused to accommodate any
> medical condition. Plaintiff thus fails to allege facts showing that any Defendant
> knew of an excessive risk to his health and acted with deliberate indifference in
> disregarding that risk. Moreover, Plaintiff also fails "to provide the factual detail
> necessary to state a claim that he suffered injuries as a result of the bed."
> DelaCruz v. City of New York, No. 15 Civ. 3030 (PAE) (JCF), 2015 WL
> 2399346, at *2 (S.D.N.Y. May 19, 2015). Plaintiff's allegations thus fail to state

3

a claim on which relief can be granted. For these reasons, Plaintiff is granted leave to amend his complaint to address the deficiencies detailed above.

(Id.)

The Order to Amend also explains that,

[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. . . . Plaintiff alleges that he wrote to Warden Mingo regarding his grievance. But he has not identified any specific individuals or stated whether any of those individuals were aware of an excessive risk of injury to Plaintiff. If Plaintiff seeks to hold any individuals liable under § 1983, he must name them as defendants in an amended complaint and provide facts demonstrating that those individuals were personally involved in the alleged violation of his constitutional rights.

(Id. at 4-5 (internal citations omitted)) The Order also informs Plaintiff that "the body of Plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief." (Id. at 6)

Although the City of New York is not named as a defendant in the Complaint, the Order to Amend also explains that, "to state a § 1983 claim against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights." (Id. at 4 (citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997); Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012)))

On December 5, 2016, Plaintiff filed the First Amended Complaint ("FAC"), in which he adds the City, Captain Leon, Officer Lewis, Physician's Assistant Guy, and John and Jane Doe as defendants. (FAC (Dkt. No. 7)) The case was assigned to this Court on December

4

27, 2016. On January 26, 2017, Plaintiff filed the SAC, which removes Bob Barker and the Doe parties as defendants, and adds Noah and Lehey as defendants. (SAC (Dkt. No. 11))

On October 17, 2017, Defendants moved to dismiss the SAC on the grounds that Plaintiff has not (1) exhausted his administrative remedies as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997(e) (the "PLRA"); (2) stated a <u>Monell</u> claim against the City; and (3) pled a violation of his constitutional rights. (Def. Mot. (Dkt. No. 26)) Plaintiff's opposition was due on November 17, 2017. (Oct. 31, 2017 Order (Dkt. No. 30)) Because Plaintiff has not filed any opposition to Defendants' motion, the motion will be deemed unopposed.

## DISCUSSION

### I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 570 (2007)). These factual allegations must be "sufficient to raise a right to relief above the speculative level.'" <u>Rahman v. Fisher</u>, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009) (quoting <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 237 (2d Cir. 2007) (citing <u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." <u>Id.</u> (citing <u>Fernandez v. Chertoff</u>, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557), and

5

does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

Because Plaintiff is proceeding pro se, this Court must construe his pleading liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed.'") (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Accordingly, the Court reads the SAC "to raise the strongest arguments [it] suggest[s]." Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (quoting Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)). "As in any other case, however, the Court accepts as true only factual allegations, and does not accept as true allegations stating only legal conclusions." Braxton v. Nichols, No. 08 Civ. 08568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) (citing Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("[T]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief].")).

6

## II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants argue that Plaintiff's claims should be dismissed because he has not exhausted his administrative remedies. (Def. Br. (Dkt. No. 27) at 10-12)

### A.    Applicable Law

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Exhaustion is 'mandatory' and 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.'" Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Porter v. Nussle, 534 U.S. 516, 524 (2002)).

The Supreme Court has held that the PLRA requires "'proper exhaustion,'" Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)), which means that "'prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself.'" Id. (quoting Jones v. Bock, 549 U.S. 199, 218 (2007)). Accordingly, the exhaustion inquiry requires courts to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009).

Here, Plaintiff's grievance is governed by the Inmate Grievance and Request Program ("IGRP"), "a four-step administrative review and appeals system for prisoner grievances within the New York City Department of Correction." Groenow v. Williams, No. 13 Civ. 3961 (PAC) (JLC), 2014 WL 941276, at *2 (S.D.N.Y. Mar. 11, 2014). The IGRP requires an inmate to

7

(1) file a complaint with the IGRP for informal resolution . . . ; (2) if unsatisfied with the disposition or a disposition has not been reached in a timely manner, request a hearing with the Inmate Grievance Resolution Committee ("IGRC") within five days of the disposition; (3) appeal to the commanding officer of the facility, who must render a decision within five working days; and (4) if the inmate is still unsatisfied with the disposition, appeal to the DOC Central Office Review Committee ("CORC"), which must issue a recommendation within 15 working days.

Id. at *2 n.1 (citing N.Y.C. Dep't of Corr., Directive 3376 (effective Sept. 12, 2012)).[1] "The inmate must take each of the four steps to exhaust the administrative grievance process."[2] Perez v. City of New York, No. 14 CIV. 07502 (LGS), 2015 WL 3652511, at *3 (S.D.N.Y. June 11, 2015).

Because a "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement, . . . 'inmates are not required to specially plead or demonstrate exhaustion in their complaints.'" Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016) (quoting Jones, 549 U.S. at 216). Nonetheless, "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." Id.

---

[1] It is a "common practice in this District" to take "judicial notice of the version of the IGRP in effect at the time of the events giving rise to [a prisoner's] claim." Leneau v. City of New York, No. 16-CV-0893 (RA), 2018 WL 583120, at *2 n.3 (S.D.N.Y. Jan. 26, 2018).

[2] "[W]here administrative remedies are not 'available' [to an inmate,] failure to comply with the PLRA exhaustion requirement may be excused." Barker v. Smith, No. 16 Civ. 76 (NSR), 2017 WL 3701495, at *4 n.3 (S.D.N.Y. Aug. 25, 2017) (citation omitted). Here, Plaintiff does not contend that the IGRP was unavailable to him. As a pre-trial detainee at the AMKC, Plaintiff had access to the IGRP, which is not so opaque that it is incapable of use. Furthermore, Plaintiff has not alleged that officers were unable or consistently unwilling to provide any relief to aggrieved inmates, or that prison administrators prevent inmates from utilizing the grievance process, whether by misrepresentation, intimidation, or otherwise.

**B.  Application**

Here, the SAC indicates that Plaintiff filed an initial grievance on June 23, 2016, and then forwarded his grievance to Warden Mingo. (See SAC (Dkt. No. 11) at 8, 12-13) The SAC does not address whether Plaintiff requested a hearing before the IGRC or appealed to the CORC.

Where, as here, "a prisoner indicates that he has taken some steps toward exhaustion, district courts will not normally infer from his silence as to any remaining steps that he has not fully exhausted." Groenow, 2014 WL 941276, at *2 (emphasis in original); see also James v. Orange Cnty. Corr. Fac., No. 09 Civ. 9226 (CM), 2011 WL 5834855, at *3 (S.D.N.Y. Nov. 18, 2011) (denying motion to dismiss for failure to exhaust administrative remedies where plaintiff supplied a "partial history of his exhaustion of the grievance process"). "[A]lthough dismissal on the basis of exhaustion . . . might be obtained if the allegations of the complaint clearly demonstrated that the defense was merited, a pro se plaintiff's pleading references to various efforts that he had made to bring alleged prison violations to the attention of the prison authorities cannot be treated as tantamount to an admission that he had not exhausted his remedies." Wesley v. Muhammad, No. 05 CIV. 5833 (GEL) (MHD), 2008 WL 123812, at *3 (S.D.N.Y. Jan. 10, 2008), report and recommendation adopted, 2008 WL 236974 (S.D.N.Y. Jan. 28, 2008); see also Randolph v. N.Y.C. Dep't of Corr., No. 05 Civ. 8820 (GEL) (MHD), 2007 WL 2660282, at *7-8 (S.D.N.Y. Sept. 7, 2007) (denying motion to dismiss complaint where plaintiff alleged that he filed grievance and received no response, because "at no point d[id] [the plaintiff] state that he failed to follow all the required grievance procedures"; "[plaintiff's] failure to mention some of the required steps cannot be deemed to establish a failure to exhaust," because "it simply leaves ambiguity as to the extent of his exhaustion efforts").

9

The cases cited by Defendants (Def. Br. (Dkt. No. 27) at 11-12) are not to the contrary, because plaintiff's failure to exhaust was clear from the face of the complaint. See Tyler v. Argo, No. 14-CV-2049 (CM) (DCF), 2014 WL 5374248, at *4 (S.D.N.Y. Oct. 10, 2014) (granting motion to dismiss based on failure to exhaust where prisoner "specifically allege[d] that he did not proceed with any additional steps in the grievance process"); Perez v. City of New York, No. 14 CIV. 07502 (LGS), 2015 WL 3652511, at *3 (S.D.N.Y. June 11, 2015) (granting motion to dismiss based on failure to exhaust where "[t]he timing of the [c]omplaint [] show[ed] that the grievance process could not have been completed when [p]laintiff commenced [the] action").

Here, it is not clear from the face of the SAC that Plaintiff failed to exhaust his administrative remedies. Accordingly, the SAC will not be dismissed based on a failure to exhaust administrative remedies.

## III.   DEPRIVATION OF A CONSTITUTIONAL RIGHT

Defendants also contend that Plaintiff's claims should be dismissed because he has not alleged the deprivation of a constitutional right. (Def. Br. (Dkt. No. 27) at 12-18)

### A.   Section 1983 Claims Generally

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right ... secured by the Constitution or the laws of the United States." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citations omitted). "To state a claim under Section 1983, a plaintiff must show: '(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; [and] (4) damages.'" Rahman v. Fisher, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009) (quoting Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008)).

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes, 13 F.3d at 519 (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)). "In order to prevail on a [S]ection 1983 claim, the plaintiff must show that the defendant's conduct deprived him of a federal right." Id. (citations omitted). Furthermore, "[a] civil rights complaint 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under [Section] 1983.'" Williams v. City of New York, No. 03 Civ. 5342 (RWS), 2005 WL 2862007, at *3 (S.D.N.Y. Nov. 1, 2005) (quoting Vishevnik v. Supreme Court of the State of New York, No. 99 Civ. 3611 (RWS), 1999 WL 796180, at *2 (S.D.N.Y. Oct. 6, 1999) (quoting Alfaro Motors Inc. v. Ward, 814 F.3d 883, 857 (2d Cir. 1987))).

Construed liberally, the SAC alleges that Defendants subjected Plaintiff to unconstitutional conditions of confinement, or failed to provide him constitutionally adequate medical care, in violation of the Fourteenth Amendment. (See SAC (Dkt. No. 11))

## B.     Unconstitutional Conditions of Confinement

### 1.     Applicable Law

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment," which requires "a showing that the officers acted with deliberate indifference to the challenged conditions." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). To state a deliberate indifference claim under Section 1983, a plaintiff must plead both objective and subjective elements. Id.

The objective element requires an inmate to allege conditions that, "either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the

11

risk of serious damage to physical and mental soundness." Id. at 30 (internal quotation marks and citations omitted). In determining whether a deprivation is "sufficiently serious," the court should not apply a "static test," but rather evaluate "the conditions themselves . . . in light of contemporary standards of decency." Id. (internal quotation marks and citations omitted).

The subjective element requires an inmate to allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee[,] even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Id. at 35. Allegations of "mere negligence" do not suffice, id. at 36, and an alleged "reckless or intentional action (or inaction)" is only sufficient if it is "the product of a voluntary act (or omission) by the official." Id. at 36 n.16.

With respect to the objective prong, "[i]t is well-settled that the mattresses in current use at Rikers Island do not in and of themselves offend the Constitution." Rivera v. Doe, No. 16 CV 8809 (PAE) (BCM), 2018 WL 1449538, at *9 (S.D.N.Y. Feb. 26, 2018), report and recommendation adopted, 2018 WL 1441386 (S.D.N.Y. Mar. 22, 2018); see also White v. Schriro, No. 16 CIV 6769 (PAE) (JCF), 2017 WL 3268202, at *3 (S.D.N.Y. July 31, 2017) ("To the extent that the plaintiff argues . . . that the Bob Barker mattress is uncomfortable and is not to be used with a foundation, these claims [] fail to establish the objective prong."), report and recommendation adopted, 2018 WL 1384506 (S.D.N.Y. Mar. 16, 2018); Youmans v. Schriro, No. 12 CIV. 3690 (PAE) (JCF), 2013 WL 6284422, at *2 (S.D.N.Y. Dec. 3, 2013) ("[T]he warning on the mattress – to the effect that the mattress is to be used without a foundation – relates to fire safety, not to chiropractic health.").

12

Prior to the Second Circuit's decision in <u>Darnell</u>, 849 F.3d 17, it was also "well-established in this District that a plaintiff complaining about an inadequate standard-issue prison mattress 'must allege facts showing that (1) he had a preexisting medical condition requiring a special bed to protect against serious damage to his future health; (2) he made that medical condition known to prison officials; (3) he requested a special bed to accommodate such medical condition; and (4) his request was denied by an official who knew of and disregarded an excessive risk to the plaintiff's health or safety.'" <u>Rivera</u>, 2018 WL 1449538, at *8 (quoting <u>Howard</u>, 2012 WL 7050623, at *9); <u>see also</u>, <u>e.g.</u>, <u>Youmans</u>, 2013 WL 6284422, at *5. "Alternatively, a prisoner could also show that the medical condition was itself created by an inadequate bed or mattress and that an official who became aware of the situation failed to remedy it." <u>Youmans</u>, 2013 WL 6284422, at *5. In light of <u>Darnell</u>, however, "rather than ask whether the charged official knew of and disregarded an excessive risk to inmate health or safety, courts [must] instead determine whether the official knew, or should have known that his or her conduct posed an excessive risk to health or safety." <u>Rivera</u>, 2018 WL 1449538, at *8 (internal quotation marks and citations omitted).

## 2. **Application**

Here, Plaintiff has not pled facts sufficient to satisfy the objective prong of a conditions of confinement claim, because he has "failed to allege either that he had a medical condition requiring a non-standard bed to protect against serious damage to his future health, or that [his] medical condition was itself created by an inadequate bed or mattress." <u>Id.</u> at *9 (internal quotation marks and citations omitted).

Plaintiff alleges that he suffers from sciatica; that he uses a "tens machine" – which "shoots electrical pulses into [his] nerves" – to treat this condition; and that his request for

13

an orthopedic mattress as a "special accommodation" was "ignored." (SAC (Dkt. No. 11) at 6)

These allegations are not sufficient to demonstrate that Plaintiff's back condition necessitated an

orthopedic mattress, however. Rivera, 2018 WL 1449538, at *9 (recommending dismissal of

conditions of confinement claim where plaintiff "offer[ed] no facts suggest[ing] that the []

mattress was the reason for his [] discomfort," "plaintiff's doctors did not prescribe any

particular kind of bedding," and plaintiff did not "allege that any other medical provider, in or

out of prison, recommended a special or different mattress"). Nor has Plaintiff pled facts

demonstrating that his condition worsened as a result of the mattress that was provided. See

Turner v. City of New York, No. 16 CIV 8864 (PAE) (RWL), 2017 WL 6942760, at *3

(S.D.N.Y. Dec. 12, 2017) (recommending dismissal where plaintiff "ha[d] not plausibly alleged

that his current mattress or the absence of a mattress either exacerbated or caused his ailments"),

report and recommendation adopted, 2018 WL 401513 (S.D.N.Y. Jan. 12, 2018). Accordingly,

Plaintiff has not pled facts sufficient to satisfy the objective prong of a conditions of confinement

claim.

           Plaintiff has likewise not pled facts demonstrating that he was denied adequate

bedding by an official who acted with deliberate indifference. Plaintiff alleges that Physician's

Assistant Noah did not "acknowledge" his condition; that Nurse Practitioner Lehey "ignored" his

request for a special mattress; and that Plaintiff complained to Physician's Assistant Guy about

his back pain (SAC (Dkt. No. 11) at 6-7), but none of these allegations demonstrates that these

individuals "knew, or should have known" that depriving Plaintiff of an orthopedic mattress

posed an "excessive risk" to his "health or safety." Darnell, 849 F.3d at 35; cf. Harris v. Moore,

No. 15 CIV 1608 (PAE) (JCF), 2015 WL 10427865, at *1, 4 (S.D.N.Y. Dec. 3, 2015) (plaintiff

sufficiently pled deliberate indifference where prison officials ignored a doctor's note that

14

"indicated that the plaintiff [had] chronic lumbar pain . . . , and requested that [plaintiff] be allowed a double mattress due to chronic lumbago") (internal quotation marks and citations omitted), report and recommendation adopted, 2016 WL 908146 (S.D.N.Y. Mar. 2, 2016).

Plaintiff's conditions of confinement claim will be dismissed.

## C.    Deliberate Indifference to Serious Medical Needs

### 1.    Applicable Law

"Claims by pretrial detainees for inadequate medical care are also analyzed under the Fourteenth Amendment," and require "the detainee [to] make two showings." Rivera, 2018 WL 1449538, at *8 (citing Lloyd v. City of New York, 246 F. Supp. 3d 704, 717 (S.D.N.Y. 2017)). The first requirement is objective: "the alleged deprivation of adequate medical care must be sufficiently serious." Id. (internal quotation marks and citations omitted). The second requirement is subjective: "the defendant must act with a sufficiently culpable state of mind." Id. (internal quotation marks and citations omitted).

"Determining whether a deprivation is an objectively serious deprivation entails two inquiries." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). "The first inquiry is whether the prisoner was actually deprived of adequate medical care." Id. Because "the prison official's duty is only to provide reasonable care," prison officials can only be found liable if they fail "'to take reasonable measures' in response to a medical condition." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 827 (1994)).

Second, a court must determine "whether the inadequacy in medical care is sufficiently serious." Id. at 280. "This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. (citations omitted). "[I]f the unreasonable medical care is a failure to provide any

15

treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. "In cases where the inadequacy is in the medical treatment given," however, "the seriousness inquiry is narrower," id., "and the focus is on the alleged inadequate treatment, not the underlying condition alone." Abreu v. Schriro, No. 1:14-CV-6418-GHW, 2016 WL 3647958, at *3 (S.D.N.Y. July 1, 2016) (internal quotation marks and citations omitted). Specifically, the court must consider "the effectiveness of the treatment the prisoner received, and the harm that resulted from the alleged shortfalls." Gonzalez v. Jones, 2010 WL 533856, at *17 (S.D.N.Y. Feb. 11, 2010), aff'd sub nom. Gonzales v. Nowak, 443 F. App'x 615 (2d Cir. 2011).

"The mental element [] of the test, for pretrial detainees, is judged by the same 'deliberate indifference' standard articulated in Darnell." Rivera, 2018 WL 1449538, at *8; see also Lloyd, 246 F. Supp. 3d at 718 ("The reasoning of Darnell applies equally to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment."). Accordingly, the question is whether the official knew, or should have known, that his or her conduct posed an excessive risk to Plaintiff's health or safety. Darnell, 849 F.3d at 35. Again, negligence is not sufficient. Id. at 36.

### 2. **Analysis**

Here, the SAC does not satisfy the objective prong of an inadequate medical treatment claim, because Plaintiff has not alleged facts demonstrating that he suffered a sufficiently serious deprivation of medical care. As an initial matter, Plaintiff does not allege that he was denied treatment. To the contrary, Plaintiff alleges that, after he was seen by Physician's Assistant Guy, he received an X-ray and was prescribed naproxen, an anti-inflammatory drug. (SAC (Dkt. No. 11) at 6-7) With respect to the adequacy of the treatment

16

he received, Plaintiff does not allege that the treatment caused him harm or was otherwise inappropriate, except to the extent that his request for an "orthopedic" mattress was ignored. "[A] prisoner's belief that he should have received more or different treatment . . . is not, without more, sufficient to state a constitutional claim," however. Rivera, 2018 WL 1449538, at *11; see also Campanello v. Ponte, No. 16 CIV 7432 (PAE) (JCF), 2017 WL 4122705, at *1, 4 (S.D.N.Y. Aug. 22, 2017) (concluding that plaintiff who allegedly suffered "from a variety of back ailments[,] including scoliosis, bulging discs, and foraminal stenosis," had not pled an inadequate medical treatment claim where he underwent an MRI and was prescribed pain medication and a back brace; reasoning that, "[a]lthough the plaintiff would rather have received an additional mattress and pillow, this preference does not rise to a constitutional entitlement"), report and recommendation adopted, 2017 WL 4124337 (S.D.N.Y. Sept. 13, 2017); Gonzalez v. Wright, 665 F. Supp. 2d 334, 347 (S.D.N.Y. 2009) ("'The prisoner's right is to medical care – not the type or scope of medical care which he personally desires.'") (quoting United States ex rel. Hyde v. McGinnis, 429 F. 2d 864, 867-68 (2d Cir. 1970)). Accordingly, Plaintiff's inadequate treatment claim must be dismissed.

Plaintiff has likewise not adequately pled the subjective component of an inadequate treatment claim. Although Plaintiff alleges that prison officials ignored his request for an orthopedic mattress, because he received other treatment, Plaintiff's mattress allegation – standing alone – is insufficient to establish deliberate indifference. It is well-settled that "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim," because "these issues implicate medical judgments and, at worst, negligence amounting to medical malpractice." Sonds v. St. Barnabas Hosp. Corr. Health Servs.,

17

151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); see also Little v. City of New York, No. 16 CIV
0780 (PAE) (JCF), 2017 WL 713895, at \*4 (S.D.N.Y. Feb. 3, 2017) (concluding that plaintiff
had not satisfied the subjective prong of an inadequate treatment claim where "the medical staff
treated [the plaintiff] with painkillers and muscle relaxers," notwithstanding "plaintiff's
contention that what he really required was a different mattress"), report and recommendation
adopted, 2017 WL 698386 (S.D.N.Y. Feb. 21, 2017). Accordingly, Plaintiff's inadequate
treatment claim must also be dismissed for failure to plead facts demonstrating deliberate
indifference.

## IV. PERSONAL INVOLVEMENT

Defendants argue that Plaintiff's claims against Warden Mingo, Captain Leon,
and Officer Lewis should be dismissed because Plaintiff has not pled facts demonstrating their
personal involvement in the alleged constitutional violations. (Def. Br. (Dkt. No. 27) at 18)

### A. Applicable Law

It is "well settled that, in order to establish a defendant's individual liability in a
suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the
alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir.
2013). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that
each Government-official defendant, through the official's own individual actions, has violated
the Constitution." Iqbal, 556 U.S. at 676. "Conclusory accusations regarding a defendant's
personal involvement in the alleged violation, standing alone, are not sufficient." Vasquez v.
Reilly, No. 15-CV-9528 (KMK), 2017 WL 946306, at \*11 (S.D.N.Y. Mar. 9, 2017).

18

Although "supervisors cannot be held liable based solely on the alleged misconduct of their subordinates," id., the personal involvement of a supervisor may be established by showing that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

## B. Application

The SAC does not plead any facts concerning Captain Leon and Officer Lewis. Because Plaintiff has not alleged any facts connecting these defendants to the alleged constitutional deprivations, he has not sufficiently pled their personal involvement. As to Warden Mingo, Plaintiff alleges only that he forwarded his grievance to her. (SAC (Dkt. No. 11) at 8, 13) That allegation is insufficient, as a matter of law, to establish her personal involvement. See, e.g., Alvarado v. Westchester Cty., 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) ("[B]ecause Section 1983 liability cannot be predicated on a theory of respondeat superior, . . . a [supervisory] defendant's mere receipt of a letter or grievance, without personally investigating or acting thereon, is insufficient to establish personal involvement.") (internal quotation marks and citations omitted); see also Watson v. McGinnis, 964 F.Supp. 127, 130 (S.D.N.Y. 1997) ("[A]llegations that an official ignored a prisoner's letter are insufficient to establish liability."). Accordingly, Plaintiff's claims against these three defendants will also be dismissed for failure to plead their personal involvement.

19

## V. **MUNICIPAL LIABILITY**

Defendants argue that Plaintiff's claim against the City should be dismissed because he has not stated a claim for Monell liability. (Def. Br. (Dkt. No. 27) at 19)

### A. **Applicable Law**

"[A] municipality cannot be held liable [under Section 1983] solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694.

Courts in this Circuit apply a two-prong test to Monell claims. A plaintiff "must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985). A plaintiff may satisfy this requirement by alleging the existence of

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Brandon v. City of New York, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (internal citations omitted). Second, "the plaintiff must establish a causal connection – an 'affirmative link' – between the policy and the deprivation of his constitutional rights." Vippolis, 768 F.2d at 44.

20

"[M]ere allegations of a municipal [policy,] custom[,] or practice . . . are insufficient to demonstrate [its] existence . . . unless supported by factual details." Triano v. Town of Harrison, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (citing Moore v. City of New York, No. 08 Civ. 8879 (PGG), 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010)). "[A] plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).

## B.    Application

Because Plaintiff has not alleged an underlying constitutional violation, the City cannot be found liable under Monell. See Seymore v. Dep't of Corr Servs., No. 11 Civ. 2254 (JGK), 2014 WL 641428, at *8 (S.D.N.Y. Feb. 18, 2014) ("Monell only 'extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.'") (quoting Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006)).

Even if the SAC alleged an underlying constitutional violation, Plaintiff has not alleged that his injuries resulted from a municipal policy or custom. The gravamen of Plaintiff's Section 1983 claim is that his requests for an orthopedic mattress were not granted. (SAC (Dkt. No. 11) at 6-7) To predicate Monell liability on such allegations, Plaintiff would need to plead facts demonstrating that the individuals who denied him the mattress worked at the policymaking level, or that the City has a policy or practice of ignoring requests for orthopedic mattresses. See Wheeler v. Wallkill, No. 16-CV-7441 (KMK), 2017 WL 2999503, at *5 (S.D.N.Y. July 13, 2017) ("[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality," unless (1) it was caused by an "officially promulgated policy as that term is generally understood," or (2) "where a single act is

21

taken by a municipal employee who, as a matter of state law, has final policymaking authority in the area in which the action was taken.") (internal quotation marks and citations omitted). Plaintiff has pled no such facts. Nor has Plaintiff alleged that a specific deficiency in the municipality's training caused his injuries. See Calderon v. City of New York, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015) (to state a Monell claim based on a failure to train, "a plaintiff must plausibly allege a specific deficiency in the municipality's training"). Accordingly, Plaintiff's Monell claim must be dismissed for failure to allege a policy, practice, or custom that caused him injury.

## VI.    **LEAVE TO AMEND**

The Second Circuit has instructed that a pro se litigant should be given at least one opportunity to "amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Gomez v. USAA Federal Savings Bank, 171 F.3d 794, 796 (2d Cir. 1999). Here, Plaintiff has filed three separate complaints, but has not succeeded in pleading a Section 1983 claim.

In the October 25, 2016 Order to Amend, Chief Judge McMahon granted Plaintiff leave to file an amended complaint and explained in detail the standards governing Plaintiff's claims. (Oct. 25, 2016 Order (Dkt. No. 6)) Since then, Plaintiff has filed two amended complaints, neither of which satisfies the standards set forth in the Order to Amend. Under these circumstances, there is no reason to believe that granting Plaintiff another opportunity to amend would yield a different result. Accordingly, dismissal of the SAC will be without leave to amend. See Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (leave to amend

22

may be denied where the plaintiff has failed "to cure deficiencies by amendments previously allowed") (internal quotation marks and citations omitted).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted. The Clerk of Court is directed to terminate the motion (Dkt. No. 26), and close this case. The Clerk is further directed is directed to mail a copy of this order, via certified mail, to pro se Plaintiff Gary Sanders.

Dated: New York, New York
        June 22, 2018

SO ORDERED.

Paul A. Gardephe

Paul G. Gardephe
United States District Judge

23